# CIRCUIT COURT OF BALTIMORE CITY.

Filed June 1, 1916.

HARRY W. NICE
VS.
HERMAN G. ENGNOTH, ET AL.
AND
HERMAN G. ENGNOTH
VS.
WALTER H. METTLE, ET AL.

*William Purnell Hall* and *Smith & Beacham* for Herman G. Engnoth.

*George T. Mister* and *William H. Lawrence* for Katherine Nelson.

*Eldridge Hood Young* and *Eugene Frederick* for John Augustyniak.

*Harry B. Wolf* and *Israel B. Brodie* for Walter H. Mettle.

DAWKINS, J.—

This is a most unusual case. Whatever conclusions I have reached will not remove the mystery of the alleged finding of the money claimed by sundry parties in this proceeding. No one has told who lost the funds or even likely to have lost them. The circumstance of the finding is singular and unusual. No one has admitted that "he stolest a cup of sack eighteen years ago and was taken with the manner and ever since then has blushed extempore."

The conclusions to which I have reached as to the one to whom the money should be awarded by a novel situation is based on the acceptance of testimony as true, that is surrounded by conflicting statements which can not be accepted as accurate. It is impossible to account for this money

being found in this cellar in any way other than as alleged by the finder. Whilst it is difficult to explain how a package containing this very considerable sum of money should be found on a rubbish pile that was constantly being changed and which was in a cellar that was frequently cleaned and which was frequented by a number of persons, yet there is no other way given by which the money has been produced, except by the sheerest speculation.

The mystery is made none the less by the fact that the money was found just when there was a change of ownership of the store and a moving was about taking place.

The proceeding is for the purpose of ascertaining the rightful owner of $1,800, alleged to have been found in the cellar under a store and dwelling at No. 2501 Fait avenue, Baltimore, Maryland, by Walter H. Mettle. This fund is claimed by certain persons other than Mettle for various reasons. It seems expedient to discuss the merits of the different claims separately, though any consideration will necessarily compel a discussion in which all the claims will be generally considered.

It must be borne in mind that whatever departure from the truth may be thought to exist in the several statements of the different parties and the witnesses, that the statements of the defendant Mettle that the money was found by him in the cellar on a rubbish pile must stand, because no one has accounted for the money in any other way and no one has shown any prior possession or ownership of the money at the time of the alleged finding. Without Mettle's statements being accepted, we have no money of which to make disposition.

1. The claim of Katherine Nelson is based on the fact that when she owned the property (in which the money was found) many years ago her mother, who drew a pension and who was possessed of some money, became paralyzed some weeks before she died. The mother when in this condition pointed to the cellar when unable to talk, and was thus believed to have indicated the location of her money. The fact that the money is dated subsequent to the date of Mrs. Eder's (Mrs. Nelson's mother) ownership of the property, disposes of this claim, even if

434

counsel had not apparently abandoned it.

2. The Engnoth claim is based on the fact of the ownership of the property from 1901 to just prior to the time of the finding of the money. Although the property had been sold by Mrs. Engnoth at the time of the alleged finding, it is contended that formal possession had not been turned over to Augustyniak, the purchaser from Engnoth, at the time, and that the finder worked for him for 14 years, and that the money was abstracted from his cash register, or in some way stolen from him by some of the boys in his employ. Mr. Engnoth himself testified that he delivered possession of the store on the 13th day of December, 1913, to Augustyniak, that he sold even the furniture on January 8, 1914. Mrs. Engnoth says they started to move on January 8, 1914, and finished on January 9, 1914, save some unimportant things left in the cellar, and they both say that they remained after the sale merely as a kindness to Augustyniak. The deed was given on December 18, 1913. The money is alleged to have been found on January 12, 1914. With these dates before us, any claim on the part of Engnoth would seem to be shut out unless he can show by some definite evidence that the money was his by right of actual ownership, by virtue of an earlier losing or mislaying of the money. There being an absolute failure of evidence in both respects, the paper title and part possession of the premises would not be sufficient to establish any claim in him. There are many unbelievable circumstances narrated as attending the finding of the money and the subsequent actions of the parties, but we are compelled to accept the explanation of how the money was found, in the absence of some proof to show that it belonged to some one else, or that it was actually stolen. It hardly seems to be a fair or proper inference to say that the boy who formerly worked for Mr. Engnoth and who is now dead came by the money improperly. Even considering all the evidence admitted or offered. would the facts that the business of Engnoth got behind and became unprofitable, that a note had to be discounted to provide money to carry it on, that the dead boy bought jewelry, that he had a few hundred dollars in bank, which was drawn out to pay his expenses in his last illness, establish the fact that the money was stolen from Engnoth? Is it reasonable to suppose that a small grocery store would produce enough revenue to allow notes of such denomination as are in this package to be improperly withdrawn from the cash receipts of the business? Would not the boy, as he had a bank account, have placed the money in bank? Would not these boys who lived in the house for a period of from 10 to 14 years have aroused the suspicion of Mr. or Mrs. Engnoth if any one was carrying on a wholesale system of stealing? Would they not have used the money without hiding it for so many years? Would not the manager of a small business like this who so readily detected the theft of nickels by the small boy have noticed the pilfering of the larger sums? We have not been unmindful of the manifest inaccuracies in the testimony in asking these questions. It is true the finder must manifest good faith and he must try to find the owner. There is no denial of what he did in these respects. For the reasons given the claim of Engnoth can not be upheld.

3. The third claim, that of Augustyniak and wife, is based on the fact that they held the title to the property (December 18, 1913) at the time of the finding, that they were actually in possession and that the alleged finder, Mettle, was in their employ. The claim is further made in his behalf that the finder had no right to go in the cellar, except as Augustyniak's servant, he having come into the employ of these claimants directly from Engnoth.

The testimony is quite conclusive that the former owner and his family, these claimants, the young clerks and others were permitted to go into the cellar in the course of their various duties; that the cellar was unlocked, and that no one had exclusive control over or possession of the cellar.

The case in 2nd Queen's Division, in which it was held that a presumption arose as to the ownership of two rings found in a pool, it seems to me, upholds a principle quite at variance with the best-reasoned cases in this country. The owner should show an intentional deposit or mislaying. The finding on the premises merely should give no title. There might be greater

reason for fixing a title in the owner of the property if the find was buried in the ground than if, as in this case, the package was found on a movable pile of rubbish. The place and manner of finding, if the article be really found, and not simply discover when mislaid, would seem to be immaterial, is a principle maintained in a long line of cases such as 104 Maine 223, Hackett; 44 Oregon 108, Roberts, and 11 R. I. 588, Jones. Many cases holding that if the finder is not a trespasser the fact that he is employed by the owner makes no difference.

I can not subscribe to the doctrine that the mere possession of property entitles the possessor to everything that may in any way or by any chance be upon the property.

4. The discussion of the rights of the other claimants has practically disposed of the claim of Mettle. If the real owner can be discovered surely he is entitled to it. There seems to be nothing else that could be done than what has been done to discover the owner. So far as the alleged finder is concerned he acted with a fair promptness in taking the money to his lawyer (the manner of his knowing him would seem to be immaterial, except in so far as it might affect his credibility). The newspapers were notified. Certain people set up claims to the fund. The same have been ably presented by the respective counsel. No actual purloining of the money from another has been shown. No improper acquisition of the fund in any way has been proven. No proof tending to show that any of the claimants ever had any such sum of money at any time has been offered. It is difficult to accept the statement that this large sum of money was found by this small salaried young man without creating any more excitement or talk on his part or on the part of his companion than it is alleged to have produced.

It is hard to believe, too, that nothing was said about it to any one or that nothing was said to the employer. Notwithstanding, however, these and other improbable things, in the absence of any proof to the contrary, we are compelled to accept the circumstances of the finding (the place, etc.) as narrated by the finder, as well as his efforts to try to find the owner. Accepting these, I believe that the title is in the finder against the whole world, save the real owner, and whilst the matter is enshrouded in mystery, I must accept the old dictum that "finding is keeping" when the owner can not be discovered, after diligent effort. I am forced to rest on the assurance that

"There is nothing covered that shall not be revealed, neither hid that shall not be known; therefore whatsoever ye have spoken in darkness shall be heard in the light and that which ye have spoken in the ear in closets shall be proclaimed from the housetops."

I am ready to sign a decree directing the money in court to be paid to the defendant (Walter H. Mettle), the costs to be paid out of the fund.